Filed 12/16/24  P. v. Tharpe CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | B329886 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA067928) |
| v. | |
| ERIC THARPE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael V. Jesic, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

In 2012, Eric Tharpe pleaded no contest to attempted murder and admitted that he personally used and discharged a firearm in committing that crime. Tharpe now appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1] The record of conviction establishes Tharpe is ineligible for resentencing as a matter of law because the record of conviction, including the preliminary hearing transcript, reflects that he was the sole perpetrator. We therefore affirm the order.

**FACTS AND PROCEDURAL BACKGROUND**

*The Underlying Offense*[2]

In 2005, Brandi Saxon-Hendricks testified at a murder trial against a Marvin Avenue Crips gang member. After that testimony, Marvin Avenue Crips gang members, including Tharpe, began threatening Saxon-Hendricks and her family. One afternoon in May 2011, Saxon-Hendricks, her husband Donte Hendricks, and several members of their family were at a burger stand in Los Angeles. Tharpe approached the burger stand and sat at a table. Tharpe repeatedly asked Hendricks, "remember

---

[1] All undesignated statutory references are to the Penal Code.

[2] We take our facts from the testimony at the preliminary hearing. "We consider only the witness testimony 'that is admissible under current law,' disregarding any testimony that was admitted at the preliminary hearing under Proposition 115, codified as subdivision (b) of section 872. (See § 1172.6, subd. (d)(3).)" (*People v. Patton* (2023) 89 Cal.App.5th 649, 652, fn. 2, review granted June 28, 2023, S279670 (*Patton*).)

me?" Tharpe then took a revolver out of his pocket and pointed it at Hendricks's chest. Hendricks grabbed Tharpe's hand and pushed the gun downward, and the gun went off. Hendricks and Saxon-Hendricks struggled with Tharpe and eventually disarmed him.

### The Charges and Plea Agreement

In July 2011, the People charged Tharpe with one count of attempted murder (§§ 664, 187, subd. (a)) and one count of assault with a firearm (§ 245, subd. (a)(2)). The information alleged that Tharpe personally used a firearm in committing both crimes. (§§ 12022.53, subd. (b), 12022.5, subd. (a).) No other defendants were named in the information.

In February 2012, Tharpe pleaded no contest to attempted murder and admitted to personally using a firearm during the commission of that crime pursuant to section 12022.53, subdivision (b).[3] He stipulated and agreed that there was a

---

[3] In the seven months that passed between the filing of the information and Tharpe's plea, there is no indication from the record on appeal that the People ever sought to charge another codefendant or accomplice in connection with the incident. We recognize that another division of this court recently found that a "single charging document does not foreclose the possibility of other people having been charged for related crimes." (*People v. Estrada* (2024) 101 Cal.App.5th 328, 339.) However, in *Estrada*, the preliminary hearing transcript suggested that "multiple perpetrators were involved," including evidence of two other people "with blood on their clothes" one of whom "carried a box cutter." (*Id.* at p. 340.) The evidence therefore did not foreclose the possibility that someone other than Estrada was the direct perpetrator. (*Id.* at p. 341.) Such was not the case during Tharpe's preliminary hearing.

factual basis for his plea and admission. Tharpe was sentenced to a determinate term of 24 years.

### *Tharpe's Petition for Resentencing*

In 2022, Tharpe filed a pro per petition for resentencing under section 1172.6, alleging he could not presently be convicted of attempted murder because of changes to sections 188 and 189.

The trial court appointed counsel for Tharpe. In July 2022, the People filed a response to Tharpe's petition. The People argued that Tharpe was ineligible for resentencing because he was prosecuted as the direct perpetrator of the attempted murder under a theory of actual malice, and not as an aider and abettor nor under the natural and probable consequences doctrine. Tharpe did not file a reply.

In February 2023, the trial court held a hearing on Tharpe's petition, during which Tharpe was represented by counsel. The People argued that Tharpe was ineligible for relief because "he was not prosecuted under a theory of impugned [*sic*] malice. He was prosecuted as the actual killer [*sic*]." Tharpe submitted on his petition. The trial court denied the petition, agreeing with the prosecution and concluding that there was "no prima facie showing at this time."

Tharpe timely appealed.[4]

---

[4] The People ask us to dismiss Tharpe's appeal because he provided an inadequate record by failing to include his petition for resentencing. However, the People later moved to augment the record to include the petition, and we granted their motion. The issue is therefore moot.

## DISCUSSION

## I.     Senate Bill Nos. 1437 and 775 and Section 1172.6

Senate Bill No. 1437 eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  Among other things, Senate Bill No. 775 expanded Senate Bill No. 1437's mandate by eliminating the natural and probable consequences doctrine as a means of finding a defendant guilty of attempted murder.  (§ 1172.6, subd. (a).)  However, a principal in a murder or attempted murder, including an aider or abettor, can still be criminally liable if found to personally possess malice aforethought, whether express or implied.  (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640.)

Taken together, Senate Bill Nos. 1437 and 775 created a procedure, now codified at section 1172.6, to allow a person convicted of murder, attempted murder, or manslaughter under the former law to seek resentencing if the person could no longer be convicted under amended section 188.  (*Lewis*, *supra*, 11 Cal.5th at p. 959.)  A defendant starts the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law.  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  In relevant part, the statute requires the court, "[a]fter the parties have had an opportunity to submit briefings," to "hold a hearing to determine

5

whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid*.) Courts may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971–972.) However, "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong, supra,* 13 Cal.5th at p. 708.)

We review de novo a trial court's denial of a resentencing petition at the prima facie stage. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

II. **The Record of Conviction Establishes That Tharpe, as the Sole Perpetrator of Attempted Murder, is Ineligible for Resentencing as a Matter of Law**

Tharpe argues that his "properly completed petition for resentencing" is sufficient to make a prima facie showing of eligibility for resentencing. He contends that the evidence presented at a preliminary hearing "has no bearing" on the prima facie inquiry. We disagree.

6

### a. *The trial court properly denied Tharpe's petition for resentencing at the prima facie stage based on uncontradicted preliminary hearing evidence*

As our high court has clarified, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition" at the prima facie stage. (*Strong, supra*, 13 Cal.5th at p. 708.) "In cases where the conviction resulted from a guilty plea rather than a trial, the record of conviction may include the transcript of the defendant's preliminary hearing testimony when the transcript 'reliably reflect[s] the facts of the offense for which the defendant was convicted.' " (*People v. Pickett* (2023) 93 Cal.App.5th 982, 988, review granted Oct. 11, 2023, S281643 (*Pickett*).)

For example, in *Patton, supra*, 89 Cal.App.5th at pp. 657–658, review granted, a different panel of this court affirmed the denial of a petition for resentencing at the prima facie stage based on transcripts from the preliminary hearing. The petitioner "pleaded no contest to attempted murder and admitted he had personally used and discharged a firearm in the commission of the crime." (*Id.* at p. 652.) The "uncontroverted" sworn testimony from witnesses who were subject to cross-examination established that the petitioner, who had pleaded no contest to attempted murder, "committed the shooting." (*Id.* at p. 658.) Patton "never offered any theory to support his implicit contention now that he was an accomplice" and not the sole perpetrator. (*Id.* at p. 657.) Because the relevant testimony was

7

uncontroverted, this court rejected the petitioner's argument that reliance on the preliminary hearing transcript necessarily involved impermissible factfinding.  (*Id.* at p. 658.)

A different division of this court reached a similar conclusion in *Pickett, supra*, 93 Cal.App.5th 982, review granted.  There, the petitioner pleaded guilty to second degree murder.  (*Id.* at p. 986.)  At the preliminary hearing, witnesses testified that the petitioner pulled out a gun while talking to the victim and fired a shot into the air.  (*Ibid.*)  The witnesses ran from the scene and heard one or two more shots fired, and one witness looked back and saw the victim on the ground with an apparent gunshot wound.  (*Ibid.*)  No evidence suggested anyone else was involved in the shooting.  (*Ibid.*)  The appellate court recognized that the preliminary hearing testimony was reliable because it affords the defendant protections, including " 'the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings.' "  (*Id.* at pp. 992–993.)  Therefore, the court reasoned:  "Under these circumstances, where the defendant alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the defendant acted alone in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition, the defendant has failed to make a prima facie showing for relief under section 1172.6."  (*Id.* at p. 990.)

In *People v. Mares* (2024) 99 Cal.App.5th 1158, review granted May 1, 2024, S284232 (*Mares*), the court rejected a petition at the prima facie stage based on the preliminary

hearing transcript for similar reasons.  The petitioner in *Mares* pleaded guilty to voluntary manslaughter.  (*Id*. at p. 1161.)  The petitioner admitted there was a factual basis for his plea but the plea form did not specify any particular facts or evidence.  (*Id*. at p. 1163.)  The court held that the petitioner failed to make a prima facie showing because the uncontradicted testimony from the preliminary hearing reflected that the petitioner "pled guilty while the People were pursuing a murder conviction based only on a theory that he was the actual killer."  (*Id*. at p. 1166.)  The court clarified that its rationale was "in accord with, but somewhat different than, the approach taken in [*Patton*] and [*Pickett*]."  (*Id*. at p. 1174.)  The court explained that "no factfinding is needed to reject the petition, as a court need not find any individual fact in the preliminary hearing was true, only that the claim that Senate Bill 1437 could matter is unsupported by the record" because no evidence suggested that the petitioner could have been convicted under a now-abrogated theory.  (*Ibid*.)

Our high court granted review in *Patton*, *Pickett*, and *Mares* to determine what role, if any, the preliminary hearing transcript may play at the prima facie stage of a section 1172.6 proceeding.  (*Patton, supra,* 89 Cal.App.5th 649, review granted; *Pickett*, *supra*, 93 Cal.App.5th 982, review granted; *Mares*, *supra*, 99 Cal.App.5th 1158, review granted.)  Pending the Supreme Court's resolution of that issue, we follow *Patton*, *Pickett*, and *Mares*.  Thus, when a conviction resulted from a guilty plea, as in *Pickett* and *Mares*, or a plea of no contest, as in *Patton*, "the record of conviction may include the transcript of the defendant's preliminary hearing testimony when the transcript 'reliably reflect[s] the facts of the offense for which the defendant was convicted.' " (*Pickett*, at p. 988.)  This transcript is reliable

9

" 'because the procedural protections afforded the defendant during a preliminary hearing tend to ensure the reliability of such evidence.  Those protections include the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings.' " (*Id*. at pp. 992–993.)  And when "uncontroverted evidence from the preliminary hearing transcript" shows that the defendant acted alone, and the defendant offers no "factual or legal theory in support of his petition, the defendant has failed to make a prima facie showing for relief under section 1172.6." (*Id*. at p. 990; *Patton*, at p. 658 [same].)

Under this standard, the uncontroverted evidence in the record of conviction contradicts Tharpe's allegation that he is eligible for resentencing.  Tharpe was charged alone and pleaded no contest to attempted murder.  The People submitted, without opposition, the transcript of the preliminary hearing.  The People's theory of the case, as reflected in the preliminary hearing testimony, was that Tharpe acted alone.  Specifically, Hendricks and Saxon-Hendricks testified that Tharpe approached them and attempted to shoot Hendricks, and no evidence suggested that an accomplice was involved.  Both witnesses testified under oath and were subject to vigorous cross-examination, which supports that their testimony is reliable. (*Pickett*, *supra*, 93 Cal.App.5th at pp. 992–993, review granted.) Therefore, because the preliminary hearing transcript reflects that Tharpe was the "sole and actual perpetrator of the attempted murder," he "is ineligible for resentencing as a matter of law." (*Patton*, *supra*, 89 Cal.App.5th at p. 657, review granted.)  Framed another way, "[t]he record contains no

indication of the involvement of any other person" and Tharpe "has never explained, in the trial court or on appeal, how he could have been convicted" under the natural and probable consequences doctrine. (*Mares*, *supra*, 99 Cal.App.5th at p. 1175, review granted.) Tharpe's assertion that he is eligible for relief because he may have been convicted under a now-abrogated theory is thus contradicted by the record of conviction. (*Ibid.*; *People v. Prettyman* (1996) 14 Cal.4th 248, 260 (*Prettyman*) [natural and probable consequences doctrine applies only to aiders and abettors].)[5]

### b. *Tharpe's other arguments do not warrant reversal*

Tharpe raises several related arguments, none of which require reversal.

Tharpe argues that the trial court necessarily engaged in improper factfinding by relying on the preliminary hearing transcript. For example, Tharpe cites *People v. Rivera* (2021) 62 Cal.App.5th 217 (*Rivera*), and *People v. Flores* (2022) 76 Cal.App.5th 974 (*Flores*), in which appellate courts reversed the denial of petitions for resentencing on this basis. (*Rivera*, at pp.

---

[5] Tharpe argues on appeal we cannot rely on his admission of the personal use of a firearm to find Tharpe was the actual perpetrator. (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 ["[T]he existence of an enhancement under section 12022.53, subdivision (d) does not show that a defendant acted with malice aforethought. It therefore does not establish as a matter of law that Offley could still be convicted of murder under the new law and is ineligible for relief under section 1170.95."].) However, our conclusion is not based on Tharpe's admission that he personally used a firearm; rather, it is based on the uncontroverted evidence from the preliminary hearing indicating Tharpe was the sole perpetrator.

238–239; *Flores*, at pp. 991–992.)  Both cases are distinguishable.
In *Rivera*, the petitioner pleaded no contest to second degree
murder and stipulated to a grand jury transcript as the factual
basis of the plea.[6]  (*Rivera*, at pp. 225–226.)  However, in his
reply brief, the petitioner "offered a theory under which the
evidence presented to the grand jury was consistent with his guilt
of murder under the natural and probable consequences
doctrine," and therefore "created a factual dispute that cannot be
resolved at the prima facie stage since nothing in the record
definitively foreclosed his theory."  (*Id*. at p. 239.)  Similarly, in
*Flores*, the petitioner pleaded no contest to second degree murder
and stipulated to the police reports and preliminary hearing
transcript as the factual basis for the plea.  (*Flores*, at p. 982.)
The preliminary hearing transcript indicated that the petitioner's
accomplice shot the victim multiple times and beat him, and
therefore the evidence did not "exclude the possibility that
petitioner was, or could have been, convicted under the imputed
malice theories eliminated by Senate Bill No. 1437 . . . ."  (*Id*. at
p. 991.)  Thus, denying the petition based on evidence presented

[6]     The difference in procedural safeguards between grand jury
proceedings and preliminary hearings raise additional questions
about the reliability of grand jury testimony not implicated by a
preliminary hearing where, as here, the defendant has a right to
be present with counsel and to cross-examine the witnesses
against him.  (See *Johnson v. Superior Court* (1975) 15 Cal.3d
248, 257 (conc. opn. of Mosk, J.) [the grand jury "is distinctive
because of its deliberate omission of even minimal safeguards. . . .
Far from being allowed to be represented by counsel or to
confront and cross-examine witnesses, the accused himself has no
right to appear unless called by the prosecution and if he is called
he is denied the presence of counsel"]); § 939.7 ["The grand jury is
not required to hear evidence for the defendant."]).

12

at the preliminary hearing "would require judicial factfinding, which is impermissible at the prima facie stage." (*Id*. at pp. 991–992.)[7]

In contrast to both *Rivera* and *Flores*, the uncontested, nonhearsay testimony from the two percipient witnesses at the preliminary hearing indicates that Tharpe was the sole assailant. There is no evidence that an accomplice or any other perpetrator was involved. We need not engage in " 'factfinding, weighing of evidence, or credibility determinations' " to conclude that Tharpe acted alone and is therefore ineligible for resentencing. (*Patton*, *supra*, 89 Cal.App.5th at p. 658, review granted.) Alternatively, because there is no evidence that Tharpe aided another perpetrator, no factfinding is required to conclude that the record does not support Tharpe's allegation that he may have been convicted under the now-abrogated natural and probable consequences doctrine. (*Mares*, *supra*, 99 Cal.App.5th at p. 1175, review granted [lack of evidence supporting abrogated theory

_____

[7]     In *Flores*, *supra*, 76 Cal.App.5th 974, the preliminary hearing testimony included numerous hearsay statements to qualified testifying law enforcement officers admissible during a preliminary hearing. (§ 872, subd. (b) ["[T]he finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer or honorably retired law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted"].) Because subsequent amendments to section 1172.6, subdivision (d)(3), prohibited reliance on such hearsay testimony in evaluating eligibility for resentencing, the People "narrowed their argument" to permissible testimony, which reflected "that petitioner admitted [accidentally] driving over [the victim] twice" after the codefendant "shot [the victim] multiple times and beat him around the head and upper body . . . ." (*Flores*, at pp. 988, 991.)

13

forecloses eligibility for resentencing]; *Prettyman*, *supra*, 14 Cal.4th at p. 260 [natural and probable consequences doctrine applies only to aiders and abettors].)

Tharpe also contends that his plea of no contest did not establish that he was the actual perpetrator of the attempted murder. This argument dovetails with the majority opinion in *People v. Williams* (2024) 103 Cal.App.5th 375, 382, review granted September 11, 2024, S286314 (*Williams*), which Tharpe identified to this court after briefing was completed through a notice of new authority. (Cal. Rules of Court, rule 8.254.) The majority in *Williams* concluded that even uncontradicted preliminary hearing testimony is insufficient to rebut a resentencing petition unless it " 'conclusively establishes every element of the offense' under a valid theory." (*Williams*, at p. 396, quoting *People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).) Although *Curiel* involved a petition by a non-shooter accomplice convicted by a jury whose instructions included the natural and probable consequence doctrine, the *Williams* majority interpreted its reasoning to apply to convictions obtained through a plea. (*Williams*, at pp. 394–396.) In turn, the majority determined that although the preliminary hearing transcript "suggest[ed] the defendant is the actual perpetrator," the petition could not be denied at the prima facie stage because the transcript did not conclusively establish all elements of the crime under any valid theory. (*Id*. at p. 398.)

We respectfully decline to adopt the *Williams* majority's reasoning. *Curiel* addressed a petition following a jury conviction, and the court cautioned that its reasoning "does not necessarily apply to other cases" involving different circumstances. (*Curiel*, *supra*, 15 Cal.5th at p. 471.) "It is well

14

settled that language contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" ' " (*People v. Banks* (1993) 6 Cal.4th 926, 945.) *Curiel* simply did not address, and should not be understood to govern, plea cases in which the record of conviction is inherently limited. (See *Mares, supra,* 99 Cal.App.5th at pp. 1172–1173, review granted ["Entering a plea agreement forecloses actual litigation of the issues that would have been tried, as well as a final determination on the merits"].) Prohibiting the denial of petitions at the prima facie stage unless the limited plea record conclusively establishes every element of the offense would inundate the superior courts with evidentiary hearings based on form petition allegations. This approach would also contravene the statute's overall purpose to ensure "that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra,* 11 Cal.5th at p. 971.)

As explained by the dissent in *Williams*:

Courts must take care not to demand too much of the petitioner at the prima facie stage, but they must also not demand so little that the prima facie review is rendered meaningless and direct perpetrator cases with uncontroverted records of conviction move to the next stage based on nothing more than a form petition with the requisite boxes checked. If, under the circumstances in this case, filing a form petition with boxes checked is sufficient to justify an evidentiary hearing, the prima facie review stage is rendered hollow, our high court's express endorsement of

15

limited record review and dismissal of petitions where the record refutes the petition allegations is not given effect, clearly meritless petitions will proceed to an evidentiary hearing, and already swamped trial courts will be needlessly burdened by conducting evidentiary hearings on meritless petitions. This is not a small matter, considering that a significant percentage of cases are resolved by plea [citations], and I am unpersuaded that this result was intended by the Legislature or compelled by *Curiel.*

(*Williams, supra,* 103 Cal.App.5th at p. 424 (dis. opn. of Meehan, J.).)

We agree with the dissent's reasoning, and we respectfully decline to adopt the *Williams* majority's expansion of *Curiel* to the plea context.

Tharpe next contends that the trial court could not rely on the preliminary hearing transcript because he did not stipulate to the facts therein. The court in *Pickett* rejected this argument, and we adopt its reasoning. "As our Supreme Court has explained, the transcript of a preliminary hearing is considered part of the record of conviction because the transcript 'reliably reflect[s] the facts of the offense for which the defendant was convicted.' " (*Pickett, supra,* 93 Cal.App.5th at p. 992, review granted, quoting *People v. Reed* (1996) 13 Cal.4th 217, 223.) "The transcript is reliable" because of " 'the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings.' " (*Pickett,* at pp. 992–993.) Those very safeguards were present in this case. No authority "supports the proposition that the preliminary

16

hearing transcript may 'inform the trial court's prima facie inquiry' only when the defendant has stipulated to the transcript as the factual basis for his plea." (*Id*. at p. 993.)

Tharpe also argues that the approach in *Patton* and *Pickett*, which we follow, improperly requires a petitioner to rebut preliminary hearing evidence at the prima facie stage. We disagree with this interpretation of the case law. "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition" at the prima facie stage. (*Strong, supra*, 13 Cal.5th at p. 708.) Thus, in *Patton* and *Pickett*, the courts properly concluded that the uncontested evidence in the record of conviction established that each respective petitioner was the sole perpetrator and therefore rebutted the allegations in the petition. (*Patton, supra*, 89 Cal.App.5th at pp. 654, 657–658, review granted; *Pickett, supra*, 93 Cal.App.5th at pp. 987, 990, review granted.) *Patton* and *Pickett* also recognized that each respective petitioner failed to file a reply and did not articulate any interpretation of the record of conviction that could support the petition. (*Patton*, at pp. 654, 657; *Pickett*, at pp. 987, 993.) But neither court required the petitioner to present evidence or theories at the prima facie stage—the opinions merely recognized that a petitioner had the opportunity to do so.[8]

---

[8] For example, the petitioner in *Rivera, supra*, 62 Cal.App.5th at pages 225–226, filed a reply which "offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under the natural and probable consequences doctrine," and therefore "created a factual dispute that cannot be resolved at the prima facie stage . . . ."

Finally, Tharpe contends that the trial court may not rely on preliminary hearing evidence to deny a petition for resentencing because that evidence would not prevent the prosecution from pursuing a conviction under a different (and potentially abrogated) theory at trial. Yet, as we have discussed, at this stage we need only determine whether the record of conviction rebuts Tharpe's allegations. (*Mares*, *supra*, 99 Cal.App.5th at p. 1175, review granted [lack of evidence supporting abrogated theory forecloses eligibility for resentencing].) No evidence suggests Tharpe aided an accomplice, and therefore the record of conviction contradicts Tharpe's allegation that he could have been prosecuted under the natural and probable consequences doctrine. (*Prettyman*, *supra*, 14 Cal.4th at p. 260 [natural and probable consequences doctrine applies only to aiders and abettors].)[9]

Tharpe is ineligible for resentencing under section 1172.6 as a matter of law and the trial court properly denied his petition.

---

(*Id*. at p. 239.) In contrast, here, Tharpe filed no reply and offered no such theory to the trial court or on appeal.

[9] In the final paragraph of Tharpe's opening brief, he asserts that the trial court's denial of his resentencing petition violated his due process rights. Tharpe recites several legal standards but his briefing fails to apply those standards to the facts of this case. We therefore reject this contention as forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [appellate court may reject a claim as forfeited "when an appellant makes a general assertion, unsupported by specific argument"].)

## DISPOSITION

The February 28, 2023 order denying Tharpe's petition for resentencing is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BERSHON, J.*

We concur:

EDMON, P. J.

ADAMS, J.

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.